UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

LaSALLE, INC.,
a Michigan corporation,

        Plaintiff,

CASE NO. 1: 03-CV-255
HONORABLE GORDON J. QUIST

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL NO. 665
unincorporated corporation

**FIRST AMENDED COMPLAINT**

and

PETER D. AMES, DARIN BACON,
THEODORE BUEHLER, JUSTIN
CUTHBERT, ROBERT DAHLIN,
STEVEN H. DEARING, LARRY DENNING,
JOSEPH R. EWING, MARIO GARCIA,
EDWARD GAVE, DAVID A. GRIFFITH,
BRIAN H. GRIHORASH, BRADFORD
HATT, MARK A. HEALEY, JIM JENKINS,
RUSSELL JONES, STEVEN KENT,
RONALD LUCE, DARRELL MAHAN,
MICHAEL J. MAHONEY, JAKE
MCAULLIFFE, DARLENE MEYER, CHRIS
MONTEGUE, THOMAS MULLANEY,
DERON PETERS, TIMOTHY D. POTTS,
LEE POWERS, SCOTT RATHBURN, KIM
REBH, SHAWN RECOLLET, JEFFREY C.
RUDDOCK, WILLIAM K. SANDERS, EARL
SHELDON, NICHOLAS SHILELKA,
DENNIS SMITH, DAVID M. SMOKER,
SCOTT STARRAK, MICHAEL
SVENDESEN, RANDEL TOOKER,
JAMES VANSLYKE, JOSEPH VERLIN,
RICHARD J. WHITEHEAD, LYLE
WILDING, DAVID WIRT,

        individuals,

        Defendants.

_____/

| | |
|---|---|
| Mark L. McAlpine (P35583) | Paul Gallagher, Esq. |
| Steven W. Wright (P56970) | GALLAGHER & GALLAGHER, PLC |
| McALPINE & McALPINE, P.C. | 412 E. Huron Street |
| 3201 University Drive, Suite 100 | Ann Arbor, MI 48104 |
| Auburn Hills, MI 48326-2361 | (734) 996-1070 |
| (248) 373-3700 | Attorney for International Brotherhood of |
| Attorneys for LaSalle, Inc. | Electrical Workers Local 665 |

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

There is no other pending or resolved civil action arising out
of the same transaction or occurrence as alleged in this Complaint.

_____

Plaintiff, LaSalle, Inc. ("LaSalle"), by and through its attorneys, McAlpine & McAlpine, P.C., states as follows for its First Amended Complaint:

### PARTIES

1. LaSalle is a Michigan corporation with its principal place of business at 5002 Dewitt, Canton, Michigan 48188.

2. Upon information and belief, Defendant International Brotherhood of Electrical Workers No. 665 (hereinafter the "Union") is an unincorporated association with its principal place of business at 5205 S. Pennsylvania Avenue, Lansing, Michigan 48911.

3. The following Union workers are additional Defendants named individually (collectively, "the Union Workers"). These individuals acted on behalf of, and as agents of, the Union. All of the individuals were involved in the events giving rise to this litigation.

   a. Defendant Peter D. Ames, an individual who resides at 187 E. Hamilton Ln, Battle Creek, Michigan

2

b.  Defendant Darin Bacon, an individual who resides at 5720 West Willow, Grand Ledge, Michigan.

c.  Defendant Theodore Buehler, an individual who resides at 4743 St. Joe, Grand Ledge, Michigan.

d.  Defendant Justin Cuthbert, an individual who resides at 6466 Maple River, Elsie, Michigan.

e.  Defendant, Robert Dahlin, an individual who resides at 4010 Haynes Road, Stockbridge, Michigan.

f.  Defendant, Steven H. Dearing, an individual who resides at 6274 East Court Street, South Burton, Michigan.

g.  Defendant, Larry Denning, an individual who resides at 1319 Plum Street, St., Alma, Michigan.

h.  Defendant, Joseph R. Ewing, an individual who resides at 1620 Ohio, Lansing, Michigan.

i.  Defendant, Mario Garcia, an individual whose address is P.O. Box 42, Millington, Michigan.

j.  Defendant, Edward Gave, an individual who resides at 514 South Ithaca, St. Ithaca, Michigan.

k.  Defendant, David A. Griffith, an individual who resides at 515 Garfield Street, Huntington, Michigan.

l.  Defendant, Brian H. Grhorash, an individual who resides at 519 Forest St., Charlotte, Michigan.

m.  Defendant, Bradford Hatt, an individual who resides at 10503 S. Brinton, Blanchard, Michigan.

n.  Defendant, Mark A. Healey, an individual whose address is P.O. Box 145, Parma, Michigan.

o.  Defendant, Jim Jenkins, an individual who resides at 1029 Boyton, Lansing, Michigan.

p.  Defendant, Russell Jones, an individual whose address is P.O. Box 26072, Lansing, Michigan.

q.  Defendant, Steven Kent, an individual who resides at 2420 Pocassett, Holt, Michigan.

r.  Defendant, Ronald Luce, an individual who resides at 6316 West Curtice Road, Easton Rapids, Michigan.

s.  Defendant, Darrell Mahan, an individual who resides at 6114 Beechfield Apt. 106, Lansing, Michigan.

t.  Defendant, Michael J. Mahoney, an individual who resides at 210 ½ West First North Street, Lainsberg, Michigan.

u.  Defendant, Jake McAulliffe, an individual who resides at 100 West John, Durand, Michigan.

v.  Defendant, Darlene Meyer, an individual who resides at 7463 Swan Creek Road, Saginaw, Michigan.

w.  Defendant, Chris Montegue, an individual who resides at 1106 Sylvan Lane, Midland, Michigan.

x. Defendant, Thomas Mullaney, an individual who resides at 520 Butterfield Drive, East Lansing, Michigan.

y. Defendant, Deron Peters, an individual who resides at 1219 Victor Avenue, Lansing, Michigan.

z. Defendant, Timothy D. Potts, an individual who resides at 443 Pondview Drive, Morrice, Michigan.

aa. Defendant, Lee Powers, an individual who resides at 6101 Corrison Road, Grand Ledge, Michigan.

bb. Defendant, Scott Rathburn, an individual who resides at 805 West Main, Grand Ledge, Michigan.

cc. Defendant, Kim Rebh, an individual who resides at 2199 Main Street, Holt, Michigan.

dd. Defendant, Shawn Recollet, an individual who resides at 3714 Sumpter, Lansing, Michigan.

ee. Defendant, Jeffrey C. Ruddock, an individual who resides at 1032 Smith Street, Lansing, Michigan.

ff. Defendant, William K. Sanders, an individual who resides at 322 West Saginaw, Lansing, Michigan.

gg. Defendant, Earl Sheldon, an individual who resides at 6070 East Price Road, St. Johns, Michigan.

hh. Defendant, Nicholas Shilelka, an individual who resides at 1118 N. Lansing St., St. Johns, Michigan.

ii. Defendant, Dennis Smith, an individual who resides at 7230 Gurd Road, Hastings, Michigan.

jj. Defendant, David M. Smoker, an individual who resides at 1538 Blue Ridge Drive, Lansing, Michigan.

kk. Defendant, Scott Starrak, an individual who resides at 109 Fernhill Court, Lansing, Michigan.

ll. Defendant, Michael Svendesen, an individual who resides at 2125 West Clark Road, Dewitt, Michigan.

mm. Defendant, Randel Tooker, an individual who resides at 3607 Doane, Grand Ledge, Michigan.

nn. Defendant, James Vanslyke, an individual who resides at 1211 Sumac Holt, Michigan.

oo. Defendant, Joseph Verlin, an individual who resides at 4075 Holt Road, Lot 90, Holt, Michigan.

pp. Defendant, Richard J. Whitehead, an individual who resides at 9405 South Grand Avenue, Claire, Michigan.

qq. Defendant, Lyle Wilding, an individual who resides at 15803 Culver, East Lansing, Michigan.

rr. Defendant, David Wirt, an individual who resides at 2063 Kenneth Street, Burton, Michigan.

## **JURISDICTION AND VENUE**

4. Jurisdiction and venue of this action are proper in this Court. This Court has jurisdiction pursuant to 29 U.S.C. § 185 (c) of all claims against the Union. This Court has

pendent jurisdiction over the remaining claims. Venue is proper in this District under the provisions of 28 U.S.C. § 185(c) and 28 U.S.C. § 1391(b) since most of the events giving rise to the claims occurred in the City of Lansing, Michigan.

## GENERAL ALLEGATIONS

5.  The events giving rise to this litigation occurred in connection with the renovation of Shaw Hall at Michigan State University (the "Project"). LaSalle entered into a contract with Michigan State University ("MSU") whereby LaSalle acted as the general contractor on the Project. Pursuant to its contract, LaSalle hired and managed the various subcontractors, including, for example, steel fabricators, piping contractors and electrical contractors, to complete the renovation.

6.  On or about May 7, 2001, LaSalle entered into a contract with Jake's Electric, a union subcontractor, to undertake and complete the electrical portion of the Project. Jake's Electric's contract was for approximately $1,093,578.19. Prior to Jake's Electric's completion of its work, it began to experience serious financial difficulties. In an effort to keep Jake's Electric on the job, LaSalle began paying the workers' fringe benefits to the Union. Even with this financial assistance, Jake's Electric was unable to complete its contract.

7.  On or about March 12, 2002, LaSalle assigned the remaining portion of Jake's Electric's contract to Ramon Electric. Upon information and belief, all electrical workers employed by Jake's Electric and Ramon Electric were members of defendant Union.

8.  From the outset of the Project, the electrical portion of the work was plagued with poor and shoddy workmanship. The Union electricians repeatedly failed to adhere to the specifications provided for the Project and, further, failed to adhere to the applicable

electrical/building code requirements. Moreover, the Union electricians worked slowly and inefficiently.

9. Because of the Union workers' repeated and numerous code violations and total disregard for Project specifications, the Union work had to be removed and re-installed several times. The costs and delays associated with the Union's work has been staggering; the electrical portion of LaSalle's contract costs doubled from an anticipated cost of $1,093,000.00 to actual costs of $2,088,500.00.

10. During the course of the Project, LaSalle repeatedly informed the Union of the problems that it was having with the Union electricians and expressed concerns that they were not qualified and properly trained. The quality of the Union's work indicated that its members working on the Project lacked the skill and expertise to complete the work on the Project in accordance with standard industry practice, the applicable code and the Project specifications.

11. LaSalle expressed further concerns to the Union that its electricians' poor workmanship and code violations were delaying the Project which contributed further to the cost overruns.

12. LaSalle's difficulties with the Union electricians continued notwithstanding LaSalle's complaints. Various members of the Union refused to work unless LaSalle agreed to pay certain amounts over and above the terms it had negotiated with Ramon Electric. Further, some of the Union electricians demanded, as condition of completion of the work, that LaSalle pay overtime (seven days / 12 hour shifts) rather than the contracted for 40 hour week, straight time.

13. Before completing the work on the Project, the Union electricians walked off the job. The Union, in addition, coerced other electrical subcontractors in the Lansing area to refuse to complete the work for LaSalle.

14. LaSalle has incurred substantial damages arising from the incompetence of the Union electricians and their repeated violations of the electrical code and failure to adhere to the specifications. It has been also damaged by the Union's interference with LaSalle's ability to contract with other electrical subcontractors in the area and by the Union's attempt to exact money from LaSalle for services not performed. The Union is responsible for the mass action of its rank and file members under ordinary doctrines of agency and pursuant to 29 U.S.C. 185(b).

## COUNT I
### (Respondeat Superior)

15. LaSalle incorporates by reference paragraphs 1 through 14.

16. At all times relevant hereto, Union Workers were members of the Defendant Union and were acting within the course and scope of their ordinary course of business and with the apparent authority of the Union.

17. Pursuant to ordinary doctrines of agency and pursuant to 29 U.S.C. 185(b), the Union is liable for the acts of its agents.

WHEREFORE, LaSalle requests that this Court declare that the Union is legally responsible for the wrongful conduct of the Union Workers.

## COUNT II
### (Unfair Labor Practices)

18. LaSalle incorporates by reference paragraphs 1 through 17.

19. The Union's actions constitute unfair labor practices pursuant to Section 158 of the National Labor Relations Act, 29 U.S.C. § 158, because its actions threatened, coerced and

restrained LaSalle with the object of forcing it to pay or deliver money, in the nature of an exaction, for services which were not performed.

20. The Union's coercion of all other Union electrical subcontractors in the area to refrain from working with LaSalle constitutes an unfair labor restraint.

21. LaSalle has been damaged by the Union's coercive and threatening actions by, including but not limited to:

    a. Harm to business reputation;

    b. Harm to its relationship with its subcontractors and with MSU;

    c. Project cost overruns;

    c. Loss of business opportunities as a result of the delays in the Project schedule.

WHEREFORE, LaSalle requests that this Court enter judgment in its favor in whatever amount is determined to be owing to LaSalle as a result of the Union's conduct, including, without limitation, interest, costs, attorneys' fees, incidental, direct and consequential damages and treble damages pursuant to 29 U.S.C. § 187.

## COUNT III
### (Tortious Interference with Advantageous Business Relationship)

22. LaSalle incorporates by reference all of the allegations of paragraphs 1-21 above as though fully restated herein.

23. LaSalle had both a contractual relationship and an advantageous business relationship with the owner of the Project, MSU.

24. LaSalle's business relationship with MSU had a reasonable likelihood of future economic benefit for LaSalle.

25. The Union knew of and had a duty not to interfere with both the contractual relationship and the advantageous business relationship between LaSalle and MSU.

26. The Union intentionally and improperly interfered with LaSalle's contractual and business relationship with MSU by, among other things, improperly performing its work and failing to perform its work in accordance with Project specifications and applicable code requirements. As a result, the work had to be re-done several times which doubled the cost of the work and delayed the Project.

27. The Union and the Union Workers further intentionally and improperly interfered with LaSalle's contractual and business relationship with MSU by engaging in a scheme to threaten and intimidate LaSalle and to exact remuneration from it for services not performed.

28. The Union and the Union Workers also disparaged LaSalle's reputation and threatened other Union subcontractors not to contract with LaSalle to finish the work on the Project which Defendants had failed to finish.

29. As a direct, proximate and foreseeable result of the intentional and wrongful interference by the Union and the Union Workers, LaSalle will continue to be damaged by, among other things:

    a. Loss of profits that it would have received from future business with MSU;

    b. Increased overall Project costs including, but not limited to, labor, materials and supplies and increased overhead.

WHEREFORE, LaSalle requests that this Court enter judgment in its favor in whatever amount is determined to be owing to LaSalle as a result of the Union's tortious conduct, including, without limitation, interest, costs, attorneys' fees, incidental, direct, exemplary and consequential damages.

## ALTERNATIVE COUNT IV
### (Alternative Third Party Beneficiary Breach of Contract – Against Defendant Union)

30. The allegations of paragraphs 1 through 29 above are fully incorporated herein by reference.

31. Upon information and belief, subcontractors Jake's Electric and Ramon Electric (the "Subcontractors") had a collective bargaining agreement with Defendant Union pursuant to which the Subcontractors employed Union electricians. Further, upon information and belief, that agreement contains a provision pursuant to which the Union agrees to be liable for its members' incorrect and non-conforming work.

32. The Subcontractors used Union electricians to perform the electrical work on the Project. The Union electricians failed to perform the work in a professional and workmanlike manner as described herein.

33. Both the Union and the Subcontractors intended their collective bargaining agreement to benefit LaSalle, in that the Union electricians were to provide quality and professional electrical services to LaSalle on the Project and the Union, through direct and indirect means, and the Union promoted the use of Union trades by promoting the quality of their work.

34. The Union, however, failed to provide electricians who could perform the work in a professional and workmanlike manner.

35. The Union owed a duty to LaSalle, as a party directly intended to benefit from the contract between the Union and the Subcontractors, to undertake and perform its work so as not to damage LaSalle.

36. The Union breached its duty by failing to provide skilled and qualified workers.

37. As a direct and foreseeable result of the Union's breach of contract, LaSalle has been damaged by, including but not limited to, the following:

    a. Loss of profits that it would have received from future business with MSU;

    b. Increased Project costs including, but not limited to, labor, materials and supplies and increased overhead.

WHEREFORE, LaSalle requests that this Court enter a judgment in its favor and against the Defendants in whatever amount is found to be owing to LaSalle, together with costs, attorney fees and interest.

### JURY DEMAND

Plaintiff hereby requests a jury for all of the foregoing claims that may be tried before a jury.

Respectfully Submitted,

McALPINE & McALPINE, P.C.

Mark L. McAlpine (P35583)
Steven W. Wright (P56970)
3201 University Drive, Suite 100
Auburn Hills, MI 48326-2361
(248) 373-3700
Attorneys for Plaintiff

Dated: June 27, 2003